Appeal of **TERMINAL WINE CO.**              Docket No. 55.

When the determination by the Commissioner to reject a claim for abatement of a tax theretofore assessed was made prior to the enactment of the Revenue Act of 1924, no appeal lies to this Board from such determination.

Submitted November 19, 1924; decided February 28, 1925.

*William B. Sullivan, Esq.*, for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal came on for hearing on a motion by the Commissioner to dismiss the petition on the ground that this Board is with-

out jurisdiction to hear and determine the taxpayer's appeal. The basis for the motion is that the petition does not state facts sufficient to confer such jurisdiction, in that (1) it does not appear from the petition that there has been, since the enactment of the Revenue Act of 1924, a determination by the Commissioner of a deficiency, and (2) it does not appear from the petition that there has been, since the enactment of the Revenue Act of 1924, a proposal on the part of the Commissioner to assess an additional tax.

At the hearing evidence was introduced by both parties bearing on the issue raised by the motion of the Commissioner. From the evidence the Board makes the following

FINDINGS OF FACT.

1. The taxpayer was in the year 1917 a Massachusetts partnership with its place of business at Boston, Mass. On or about March 15, 1918, the taxpayer filed a return of its income for purposes of taxation covering the calendar year 1917, and paid the tax shown in such return.

2. During the month of October, 1922, a revenue agent made an examination of the taxpayer and, upon audit of the revenue agent's report of such examination, the Commissioner, on January 10, 1923, assessed an additional tax in the amount of $1,942.57 against the taxpayer and placed such assessment on the February, 1923, list. The taxpayer was advised of the assessment by letter from the Commissioner dated January 22, 1923. The assessment thus made was a so-called noncompliance assessment, that is to say, the taxpayer did not have the benefit of section 250 (d) of the Revenue Act of 1921 giving it the right to appeal to the Commissioner and be heard in opposition to such additional tax before assessment thereof.

3. On March 9, 1923, the taxpayer filed with the collector at Boston, Mass., a claim for abatement on Treasury Department Form No. 47, demanding the abatement of the assessment referred to in the foregoing paragraph. This claim for abatement was duly forwarded and received by the Commissioner for consideration. Taxpayer attached to its claim for abatement, as a part thereof, a statement of its contentions in support of the claim for abatement, as well as an argument and citation of authorities in support of such contentions.

4. Upon consideration of the taxpayer's claim for abatement the Commissioner determined to reject the same and, on November 15, 1923, forwarded to the taxpayer the following letter:

Nov. 15, 1923.

IT:PA:1
RTG–105
TERMINAL WINE COMPANY,
     106 Canal Street,
          Boston, Mass.

SIRS: Your claim for the abatement of $1,942.57 income tax for 1917 has been reached for consideration.

The claim is based on objections to the adjustment made by the revenue agent of the item $20,336.89 representing repairs and replacements on the leased property in which your business was conducted.

The adjustment made by the revenue agent has been approved inasmuch as it is held by this office that a lessee may prorate the cost of improvements,

on leased property, over the life of the lease and claim a suitable amount of deduction each year.

You stated in your claim that the lease period ended April 20, 1921, and your business closed June 30, 1919.

In the event that you surrender your lease on the date your business closed that part of the deduction of $10,000.00 not claimed in 1918 is an allowable deduction against your gross income for 1919 and you are advised that in the event you did not claim as a deduction against gross income in 1918 and 1919 the proportionate parts of this item you may avail yourself of the right to file amended returns and claims for the abatement or refund of the amount of tax assessed in excess of your true tax liability.

However, if you continued to pay an annual rental for the leased property until April 20, 1921, the cost of improvements should be prorated over the entire life of the lease and amended returns and claims filed accordingly.

Therefore, your claim for the abatement of $1,942.57 income tax for 1917 will be rejected.

The Collector of Internal Revenue for your district will be officially notified of the adjustment at the expiration of thirty days from the date of this letter unless prior to that date evidence is furnished showing the adjustment is incorrect.

Under no circumstances should payment of the amount rejected be made until a bill is received from the Collector of Internal Revenue for your district and remittance should then be made to him.

Respectfully,

J. G. BRIGHT,
*Deputy Commissioner.*
By ALBERT LEWIS,
*Head of Division.*

SAW/mf-4

5. Within 30 days from the date of the letter set out in paragraph 4 above, Mr. Joseph F. Sullivan, one of the partners of the taxpayer, addressed a letter to the Commissioner, dated November 21, 1923, in which he protested the position taken by the Commissioner in his letter of November 15. This letter is in substance a reiteration of the statements and argument contained in the appendix attached to the claim for abatement above referred to. A major portion of the letter was identical therewith. The letter of November 21, 1923, does not purport to forward or to contain evidence proving the incorrectness of the determination of the Commissioner, but is a restatement of the contention of the taxpayer together with an argument in support of such contention.

6. On December 9, 1923, taxpayer filed with the collector at Boston, Mass., a claim for refund of taxes theretofore paid by it in accordance with its return for the calendar year 1917. Attached to this claim was a statement and argument similar in form and content to that contained in the appendix to its claim for abatement filed on March 9, 1923, and to that contained in the letter of Joseph F. Sullivan forwarded to the Commissioner on November 21, 1923. The Commissioner determined to reject this refund claim, and on April 1, 1924, wrote to the taxpayer as follows:

IT : PA : 1                                                               APRIL 1, 1924.
PBM–105
TERMINAL WINE COMPANY,
        106–108 Canal Street,
            Boston, Massachusetts.

SIRS : Your claim for refund of $10,451.94, partnership excess profits tax for 1917, has been examined.

The claim is based on the statement that you were illegally assessed as a partnership in 1917 and in support of that basis refer to Revenue Acts of 1916, 1918 and 1921.

You are advised that the assessment of excess profits tax on your 1917 income was made in accordance with the War Revenue Act, approved October 3, 1917, and promulgated in Regulations No. 41, relative to war excess profits tax.

Therefore, your claim will be rejected.

The rejection will officially appear on the next list to be approved by the Commissioner.

Respectfully,

J. G. BRIGHT,
*Deputy Commissioner.*

By ———— ————,
SAW : MCH–2        *Head of Division.*

7. No communications other than those herein above enumerated passed between the Commissioner and the taxpayer. On July 18, 1924, the collector at Boston, Mass., served upon the taxpayer a demand for payment of the additional tax here in question, together with interest thereon. Such notice and demand by the collector was in words and figures as follows:

| Notice and demand for income tax | Old balance | Date | Tax | Amount paid |
|---|---|---|---|---|
| Form 1–17a–Revised June, 1923.<br>United States Internal Revenue Service. | 16½   Mos.<br>Int. ½% | | $1,942.57<br>158.64 | 16½   Mos.<br>Int. ½%. |
| | | | 2,101.21 | |
| Notice is hereby given that there has been assessed against you the amount of tax stated on this notice. Demand is hereby made for the immediate payment of said tax. If payment is not made within ten days after date of this notice, the Act provides that a penalty of 5 per cent of the amount of tax due will be added, plus interest at the rate of 1 per cent per month, from 7/28/24 until paid.<br>Date----------------------------------7/18/24 | | | Balance due.<br>$1,942.57<br>158.64 | Remarks.<br>Feb.    1923<br>List P. 41,<br>L. 2 1917 |
| | | | 2,101.21 | Income<br>Claim rej.<br>17:2/28/23<br>MGO |
| | To avoid penalty and interest this tax must be paid to the Collector of Internal Revenue at Boston, Mass., not later than 7/28/24. | | | |
| | Date------- | | | |
| | To the Collector of Internal Revenue: I enclose herewith the sum of $-------------- in payment of the tax shown above. | | | |
| Feb. 1923 List, P. 41, L. 2, 1917 income.<br>Terminal Wine Co.,<br>106 Canal St., Boston, Mass. | Name----------------------------------⌈Collector's ⌉<br>Address--------------------------------⌊Paid Stamp.⌋ | | | |
| | ------------------------- | | | |

RETURN THIS FORM WITH REMITTANCE

8. The taxpayer appealed to this Board by filing a petition on August 23, 1924. The petition alleged that the deficiency letter appealed from was the letter received by the taxpayer from the Commissioner dated January 22, 1923. The Commissioner filed a motion to dismiss the petition on the ground that the allegations therein did not confer jurisdiction on this Board, in that it did not appear from such petition that there had been a determination by the Commissioner of a deficiency since the enactment of the Revenue Act of 1924, and for the further reason that it did not appear from the petition that the Commissioner had proposed, since the enactment of the Revenue Act of 1924, to assess an additional tax against this taxpayer. At the hearing on the motion the taxpayer took the position that the notice and demand for payment (on Form 1–17a) of the additional assessment theretofore made was in effect a determination by the Commissioner of a deficiency, and that such notice

constituted in effect a statutory deficiency letter from which his appeal might properly be taken to this Board.

## DECISION.

The motion of the Commissioner is granted and the appeal is dismissed.

## OPINION.

KORNER: This Board has heretofore held, in *Garneau's Appeal*, 1 B. T. A. 75, that if, subsequent to June 2, 1924, the Commissioner determined that a deficiency was due, jurisdiction of an appeal from such determination is conferred on this Board by the Revenue Act of 1924; and that if the Commissioner so determined prior to that date, this Board is without such jurisdiction. Therein this Board declined to hold that an *assessment* constitutes *per se a determination*.

By its very definition and etymology the word "determination" irresistibly connotes consideration, resolution, conclusion, and judgment. Webster's New International Dictionary (1924 edition) defines "determination" as follows:

State of decision; a judicial decision, settling and ending a controversy; a conclusion. Act of coming to a decision; that which is determined upon; purpose; conclusion; fixed resolution. A delimitation; a determining of bounds; a fixing of the extent, position or character of anything. A bringing or coming to an end; termination.

The same authority defines the transitive verb "determine" as follows:

To bring to a conclusion, as a question or controversy; to settle by authoritative or judicial sentence; to decide; as, the court has *determined* the cause. To conclude or decide as the result of investigation, reasoning, etc.

The *determination* from which a taxpayer may appeal is one which fixes the amount of *deficiency* in tax. It is the final decision by which the controversy as to the deficiency is settled and terminated, and by which a final conclusion is reached relative thereto and the extent and measure of the deficiency defined. An *assessment* made without compliance with the statutory remedy of appeal contained in section 250 (d) of the Revenue Act of 1921, and against which a claim for abatement is received for consideration by the Commissioner, does not meet the definition of a determination above given. The listing of an assessment followed by a notice to the taxpayer that an abatement claim will be received and the correctness of the amount of the tax later settled on the merits of the controversy (or the acceptance of such a claim for consideration without such notice) effectually refutes the idea that the assessment is a *determination* as above defined. The statute, for the purpose of protecting the public revenue, authorizes the Commissioner under certain circumstances to assess taxes without benefit to the taxpayer of his statutory right to a determination prior to such assessment. Such assessments are familiarly referred to as *summary, jeopardy,* or *noncompliance* assessments.. These terms are loosely used and frequently interchangeably, though strictly speaking they are not the

same. However, in any such case, where the Commissioner so assesses a tax and thereafter accepts an abatement claim in which are set up the contentions of the taxpayer against the deficiency assessed, the issue between the taxpayer and the Commissioner is then set up and it is then that a controversy arises between the parties. It must be apparent that to hold that the assessment constitutes the determination, or presupposes (under these circumstances) a determination, is to hold that the issues are determined before they are raised and before the controversy arises. To so hold would necessarily deprive the taxpayer of a determination *on the issues*. A controversy settled and decided before there is a controversy is not a controversy at all. As defined above a *determination* must be a settling of an existing controversy susceptible of consideration, decision, and conclusion—and a *termination* thereof. That which has not begun can not be terminated.

In the case of an assessment made under such circumstances, the only object that can exist in accepting an abatement claim is to define, fix, and adjudicate the proper deficiency after a decision on the merits involved in the issue raised by the abatement claim. It follows that a determination of the deficiency thus in issue is the result of the consideration of the issues involved in such deficiency.

Section 250(d) of the Revenue Act of 1921, providing for appeal and determination of a deficiency before assessment, is as follows:

If upon examination of a return made under the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or this Act, a tax or a deficiency in tax is discovered, the taxpayer shall be notified thereof and given a period of not less than thirty days after such notice is sent by registered mail in which to file an appeal and show cause or reason why the tax or deficiency should not be paid. Opportunity for hearing shall be granted and a *final decision* thereon shall be made as quickly as practicable. Any tax or deficiency in tax *then determined* to be due shall be assessed and paid, together with the penalty and interest, if any, applicable thereto, within ten days after notice and demand by the collector as hereinafter provided, and *in such cases no claim in abatement* of the amount so assessed shall be entertained: *Provided*, That in cases where the Commissioner believes that the collection of the amount due will be jeopardized by such delay he may make the assessment without giving such notice or awaiting the conclusion of such hearing. (Italics ours.)

From the foregoing it is apparent that the *final decision* upon which the deficiency is *then determined* does not contemplate an assessment, but on the contrary means a determination as defined above in this opinion. Because the determination *is* final and constitutes a termination of the controversy on the issues it is provided that *in such cases no claim in abatement* shall be entertained. The provision for the entertainment of abatement claims is entirely superfluous and meaningless otherwise. What then is the meaning of this provision? It must be clear that it means that where there is *not* that *final decision* and a deficiency *then determined*, a claim in abatement will be entertained. If then a final decision and determination is predicated on a hearing and consideration of the issues, when does such final decision and determination take place when assessment is made under the *proviso* without notice to the taxpayer or without awaiting the conclusion of a hearing on an appeal already filed? It must take place after the assessment; and, upon the issues then raised as to the correctness of the deficiency, the determination will be made

and the controversy terminated. We are constrained to believe that Congress intended that in such cases the practice should be " assess first and hear and determine the correctness of the deficiency afterwards " instead of " assess first and sue afterwards to recover taxes erroneously paid under such assessment." In our opinion this intention on the part of Congress was one of the underlying reasons for the creation of this Board as part of a general system of remedial legislation.

What is the application of the foregoing to the facts of the instant appeal? The Commissioner assessed an additional tax on January 10, 1923, without notice to the taxpayer and without benefit to it of section 250(d) of the Revenue Act of 1921. This was conceded by the Commissioner to have been a jeopardy assessment within the contemplation of that section. The taxpayer filed a claim in abatement on March 9, 1923, which was received and entertained by the Commissioner. The abatement claim was accompanied by a statement of its contentions and an argument in support of them. The contentions and argument were considered by the Commissioner. (See letter to taxpayer dated November 15, 1923.) As a result of such consideration the Commissioner determined to reject the abatement claim and notified the taxpayer by letter of November 15, 1923, of such determination. He further advised the taxpayer that the collector at Boston, Mass., would be officially notified of his (the Commissioner's) determination at the expiration of 30 days after November 15, 1923, unless prior to that date evidence should be furnished showing the adjustments to be incorrect.

In response to this letter, one of the partners of the taxpayer forwarded to the Commissioner a letter, dated November 21, 1923, in which he restates his contentions, and reviews the facts and repeats the argument set out in the statement attached to the claim in abatement filed by taxpayer on March 9, 1923. The taxpayer argues that the effect of the eighth paragraph of the Commissioner's letter of November 15, 1923, is to negative the idea that such letter was a notification of a determination by the Commissioner. We are unable to agree with the taxpayer in this respect. That letter clearly conveys notice to the taxpayer that the Commissioner had decided the issues raised by its claim for abatement and had determined to reject the abatement claim. The eighth paragraph can be read to mean nothing more than that if taxpayer should, prior to the Commissioner's notification to the collector of his determination, file *evidence* showing the determination of the Commissioner to be in error, such evidence would receive consideration. We do not believe there is tenable ground for holding that this letter does not evidence a determination and a termination of the controversy. Under given conditions the Commissioner might have reconsidered his determination. Such condition would necessarily depend on the introduction of *evidence* within the specified time. The taxpayer failed to do this. The letter forwarded by it, dated November 21, 1923, can not be said to have contained any matters of an evidentiary nature. The determination of the Commissioner, therefore, remained undisturbed and final. No further correspondence or communications passed between the parties relative to this issue. On July 18, 1924,

the collector called upon the taxpayer to pay the assessment. This was not a determination by the Commissioner of a deficiency, nor was it such a notice to the taxpayer of a determination as was contemplated by Congress in section 274 of the Revenue Act of 1924 as constituting the basis for an appeal to this Board.

In our opinion the filing of a refund claim by the taxpayer on December 9, 1923, and its rejection by the Commissioner, as evidenced by his letter to taxpayer dated April 1, 1924, does not affect the decision of this case. As we view it, this was a separate transaction. In so far as it involves a claim for refund, this Board would be without jurisdiction in any event. To the extent that it was argued that it involved the same issues as those in the claim in abatement and that the rejection of the refund claim was a determination of the whole issue involved here, it can not affect the result, since the rejection of the refund claim occurred in April, 1924, two months before the enactment of the Revenue Act of 1924.

On consideration by the Board, LITTLETON, MARQUETTE, SMITH, and TRAMMELL concurred in the result only.