Howard S. SCAR and Ethel M. Scar, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 85–7212.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided April 14, 1987.

Mark Bernsley, Los Angeles, Cal., for petitioners-appellants.

Francis Allegra, David I. Pincus, Washington, D.C., for respondent-appellee.

Before FLETCHER, NELSON and CYNTHIA HOLCOMB HALL, Circuit Judges.

FLETCHER, Circuit Judge:

Taxpayers Howard and Ethel Scar petition for review of the Tax Court's denial of their motion to dismiss for lack of jurisdiction and denial of their two summary judgment motions. Taxpayers argue that the Tax Court lacked jurisdiction because the Commissioner of the Internal Revenue Service (IRS) issued an invalid notice of deficiency. Alternatively, they argue that the Tax Court incorrectly denied their motions for summary judgment and should not have granted the Commissioner's request to amend his answer. We reverse.

## BACKGROUND

On September 3, 1979, petitioners Howard and Ethel Scar filed a joint return for tax year 1978.[1] The Scars claimed business deductions totaling $26,966 in connection with a videotape tax shelter,[2] and reported total taxes due of $3,269.

On June 14, 1982, the Commissioner mailed to the Scars a letter (Form 892); it listed taxpayers' names and address, the taxable year at issue (the year ending December 31, 1978), and specified a deficiency amount ($96,600). The body of the letter stated in part:

> We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is a NOTICE OF DEFICIENCY sent to you as required by the law.

---

1. The return was timely, the Scars having received an extension of time to file.

2. The Scars also claimed deductions and credits with regard to this tax shelter on their 1977 returns. They received a notice of deficiency in April of 1981 and petitioned the Tax Court for a redetermination in June of 1981. In February of 1985 the Tax Court made a deficiency determination of $10,410 for the tax year 1977.

It informed the taxpayers that if they wished to contest the deficiency they must file a petition with the United States Tax Court within 90 days.

Attached to the letter was a Form 5278 ("Statement—Income Tax Changes") purporting to explain how the deficiency had been determined. It showed an adjustment to income in the amount of $138,000 designated as "Partnership—Nevada Mining Project." The Form 5278 had no information in the space on the form for taxable income as shown on petitioners' return as filed. It showed as the "total corrected income tax liability" the sum of $96,600 and indicated that this sum was arrived at by multiplying 70 percent times $138,000.

Another attached document, designated as "Statement Schedule 2," with the heading "Nevada Mining Project, Explanation of Adjustments," stated as follows:

> In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum tax rate of 70%.
>
> The tax assessment will be corrected when we receive the original return or when you send a copy of the return to us.
>
> The increase in tax may also reflect investment credit or new jobs credit which has been disallowed.

Also attached to the letter was a document, designated as "Statement Schedule 3," with the heading "Nevada Mining Project, Explanation of Adjustments." This document explained why the Nevada Mining Project deductions were being disallowed.

On July 7, 1982, the taxpayers filed a timely petition with the Tax Court to redetermine the deficiency asserted. In their petition, they alleged that they had never been associated with the "Nevada Mining Project Partnership" and had not claimed on their 1978 return any expenses or losses related to that venture. The Commissioner, on August 30, 1982, filed an answer denying the substantive allegations of the petition.

Sometime in September 1982, the Commissioner conceded in a telephone conversation with the taxpayers that the June 14 notice of deficiency was incorrect because it overstated the amount of disallowed deductions and wrongly connected taxpayers with a mining partnership. Nevertheless, the Commissioner maintained that the notice of deficiency was valid. The Commissioner confirmed his position in a letter dated November 29, 1982, stating "the taxpayers should not be surprised by the fact that the Commissioner means to disallow the deductions claimed in 1978 for Executive Productions, Inc." because similar objections had been made to the deductions claimed for the same tax shelter on taxpayers' 1977 return. The Commissioner enclosed with this letter a revised Form 5278, which contained the appropriate shelter explanation and decreased the amount of tax due to $10,374, and notified the taxpayers that he intended to request leave from the Tax Court to amend his answer.

On December 6, 1982 the taxpayers filed a motion to dismiss for lack of jurisdiction, claiming that the June 14 notice of deficiency was invalid because the Commissioner failed to make a "determination" of additional tax owed before issuing the notice of deficiency. The Commissioner filed a response which conceded the inaccuracy of the notice of deficiency but maintained that it was sufficient to give the Tax Court jurisdiction. On March 21, 1983, the Tax Court held a hearing on the taxpayers' motion to dismiss. At the hearing, counsel for the Commissioner attempted to explain why the Form 5278 sent to the taxpayers contained a description of the wrong tax shelter. He stated that an IRS employee transposed a code number which caused the IRS to assert the deficiency on the basis of the Nevada mining project instead of the videotape tax shelter. No witness, however, testified to this fact at the hearing,[3] and no explanation was ever offered for the discrepancy of over $80,000 between the deficiency notice assessment and that later conceded to be the correct amount.

---

**3.** The Commissioner argues that a witness was present at the hearing, but since taxpayers failed to object to counsel's explanation of the IRS's mistake, the witness was never called.

Following the March 21 hearing, the taxpayers filed a motion for summary judgment based on the Commissioner's concession that they had not been involved in any mining partnerships. The Commissioner shortly thereafter filed his motion to amend his answer to correct the error made in the notice of deficiency and accompanying documents. On November 17, 1983 the Tax Court, in an opinion reviewed by the full court, ruled on these various motions. The Tax Court majority upheld the validity of the June 14 notice of deficiency, finding that it satisfied section 6212(a),[4] which states the formal requirements for a deficiency notice. The Tax Court further ruled that the Commissioner could amend his answer as requested, and denied taxpayers' motion for summary judgment. The reviewed opinion contained several concurring and dissenting opinions. Five dissenting judges would have denied jurisdiction on the basis that the deficiency notice was invalid and four dissenting judges would not have permitted the Commissioner to amend his answer.

The Commissioner amended his answer and asserted in it, despite the patent incorrectness of the notice of deficiency and the acknowledgment of error by the Service, that the taxpayer had the burden of disproving the correctness of the Commissioner's revised determinations. The taxpayers renewed their motion for summary judgment. The Tax Court denied this second motion for summary judgment on the ground that triable issues of fact remained concerning whether the taxpayers' primary motivation for entering the videotape venture was the prospect of earning a profit or avoiding tax. On February 22, 1985, the Tax Court entered a decision, pursuant to a stipulation, that taxpayers owed $10,377 in additional tax.[5] The stipulation afforded the taxpayers the right to file a petition for review of the Tax Court's adverse rulings.

## DISCUSSION

 In order to decide whether the Tax Court had jurisdiction we review *de novo*

the Tax Court's interpretation of section 6212(a). *Orvis v. Commissioner*, 788 F.2d 1406, 1407 (9th Cir.1986); *Ebben v. Commissioner*, 783 F.2d 906, 909 (9th Cir.1986).

Section 6212(a) states in part: "If the Secretary determines that there is a deficiency in respect of any tax imposed ... he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Section 6213(a) provides in part: "Within 90 days ... after the notice of deficiency authorized in section 6212 is mailed ... taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." The Tax Court has jurisdiction only when the Commissioner issues a valid deficiency notice, and the taxpayer files a timely petition for redetermination. "A valid petition is the basis of the Tax Court's jurisdiction. To be valid, a petition must be filed from a valid statutory notice." *Stamm International Corp. v. Commissioner*, 84 T.C. 248, 252 (1985). *See Midland Mortgage Co. v. Commissioner*, 73 T.C. 902, 907 (1980).

The taxpayers correctly note that section 6212(a) authorizes the Commissioner to send a notice of deficiency only if he first "determines that there is a deficiency." Because the deficiency notice mailed to the taxpayers contained an explanation of a tax shelter completely unrelated to their return, contained no adjustments to tax based on their return as filed, and stated affirmatively that the taxpayers's return is "unavailable at this time," taxpayers maintain that the Commissioner could not have "determined" a deficiency with respect to them. The taxpayers assert that, in the absence of a determination, the deficiency notice was invalid and therefore the Tax Court lacked jurisdiction.

The Tax Court rejected this argument, finding that "[t]he requirements of section 6212(a) are met if the notice of deficiency sets forth the amount of the deficiency and the taxable year involved." *Scar v. Commissioner*, 81 T.C. 855, 860–61 (1983).

---

**4.** All section references are to the Internal Revenue Code of 1954, Title 26 U.S.C., as amended and in effect for the years in issue.

**5.** This amount is inexplicably $3.00 higher than the amount claimed by the Commissioner in his amended answer.

■ We agree with the Tax Court that no particular form is required for a valid notice of deficiency, *Abrams v. Commissioner*, 787 F.2d 939, 941 (4th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986); *Benzvi v. Commissioner*, 787 F.2d 1541, 1542 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986), and the Commissioner need not explain how the deficiencies were determined. *Barnes v. Commissioner*, 408 F.2d 65, 68 (7th Cir.) (citing *Commissioner v. Stewart*, 186 F.2d 239, 242 (6th Cir. 1951)), *cert. denied*, 396 U.S. 836, 90 S.Ct. 94, 24 L.Ed.2d 86 (1969). The notice must, however, "meet certain substantial requirements." *Abrams*, 787 F.2d at 941. "The notice must at a minimum indicate that the IRS has determined the amount of the deficiency." *Benzvi*, 787 F.2d at 1542. The question confronting us is whether a form letter that asserts that a deficiency has been determined, which letter and its attachments make it patently obvious that no determination has in fact been made, satisfies the statutory mandate.[6]

■ In none of the cases on which the Tax Court relied was the notice challenged on the basis that there was no determination. *See Abatti v. Commissioner*, 644 F.2d 1385, 1389 (9th Cir.1981) (notice valid although it did not advise the taxpayer under which code section the IRS would proceed because fair warning was given before trial); *Barnes*, 408 F.2d at 68 (notice need not state the basis for the deficiency determination nor contain particulars of explanations concerning how alleged deficiencies were determined); *Foster v. Commissioner*, 80 T.C. 34, 229–30 ((1983) (notice must advise taxpayer that Commissioner has, in fact, determined a deficiency, and must specify the year and amount), *aff'd in part and vacated in part*, 756 F.2d 1430 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986); *Hannan v. Commissioner*, 52 T.C. 787 (1969) (deficiency notice valid where record did not show that Commissioner had not assessed a deficiency even though Commissioner asserted that no deficiency existed and that the notice had been issued in error).[7] The cases assume that the defi-

---

6. The dissent misstates this case in complaining that the majority is requiring the Commissioner "to prove that he has reviewed specific data before making a determination." Dissent at 1371. Under normal circumstances it would be presumed that a determination had been made prior to notification. In this case, the *taxpayers* proved that a determination of their deficiency had not been made. Not only was there no relationship between the Scars and the tax shelter or the amount of the "deficiency," but also the attachment to the notice entitled "Nevada Mining Project, Explanation of Adjustments" stated: "In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum tax rate of 70%." *Scar v. Commissioner*, 81 T.C. 855, 856 (1983). The Scars demonstrated that the Commissioner had *not*, as the dissent argues at 1373–74, "clearly determined that the taxpayers had invested in a tax shelter" for the tax year 1978. Furthermore, even if the Commissioner had adduced proof through the "stand-by" witness, *see supra* note 3, that the Commissioner had examined the 1978 tax return of Executive Productions, Inc., a tax shelter, and that it reported an investment by the Scars, the Commissioner could not determine a deficiency for the Scars without examining their return for 1978 to see whether they had claimed a deduction for such an investment.

7. In *Hannan*, the IRS attempted to avoid a Tax Court redetermination by asserting that the deficiency notice had been sent in error and that the taxpayers were liable for an addition in tax not attributable to a deficiency. Such additions can be assessed and collected immediately under § 6662 (formerly § 6659) without resort to the statutory deficiency procedures. The issue in *Hannan* was not whether a determination had occurred, but rather whether the Commissioner's contention that no deficiency actually existed deprived the Tax Court of jurisdiction.

In *Hannan*, the IRS clearly had made a determination of a deficiency in tax owed by taxpayers who were petitioning the tax court; the question was whether it was a determination of deficiency entitling the taxpayers to appeal before payment. The *Hannan* court found that the act of sending the notice constituted a determination of deficiency. 52 T.C. at 7981. That finding must, however, be read in the context of the case: The IRS *had* examined the taxpayers returns and made a determination that money was owing *and* the record did not show that the type of assessment requiring deficiency procedures had not been made. We do not read *Hannan* to stand for the proposition that the existence of a deficiency letter establishes the existence of a determination. To the extent that the *Hannan* court intended such a reading, we disagree with its interpretation of the tax code.

ciency determination was made. With the exception of *Hannan,* they deal instead with the question of whether the notice imparted enough information to provide the taxpayer with fair notice.

The Tax Court asserts that it is following long-established policy not to look behind a deficiency notice to question the Commissioner's motives and procedures leading to a determination. *See, e.g., Riland v. Commissioner,* 79 T.C. 185, 201 (1982) (notice valid, even though IRS agents violated procedures set forth in internal manual and failed to forward relevant documents to agents handling the case); *Estate of Brimm v. Commissioner,* 70 T.C. 15, 23 (1978) (notice valid despite taxpayer's argument that procedures followed were not valid, the amount of time spent evaluating a case and the extent to which review functions were perfunctorily performed are irrelevant; even if Commissioner's procedures are flawed, the proper remedy would not be dismissal); *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327 (1974) (court will not look behind notice to examine whether Commissioner discriminatorily selected taxpayer for audit; even if his actions are discriminatory, notice not void).

■ We agree that courts should avoid oversight of the Commissioner's internal operations and the adequacy of procedures employed. This does not mean, however, that the courts cannot or should not decide the validity of a notice that can be determined solely by references to applicable statutes and review of the notice itself.

In this case, we need not look behind the notice sent to the taxpayers to determine its invalidity. The Commissioner acknowledges in the notice that the deficiency is not based on a determination of deficiency of tax reported on the taxpayers' return and that it refers to a tax shelter the Commissioner concedes has no connection to the taxpayers or their return.

Section 6212(a) "authorize[s]" the sending of a deficiency notice "[i]f the Secretary *determines* that there is a deficiency." (emphasis added). We agree with Judge Goffe's statement in this case that "[e]ven a cursory review of this provision [section 6212(a)] discloses that Congress did not grant the Secretary unlimited and unfettered authority to issue notices of deficiency." *Scar,* 81 T.C. at 872 (Goffe, J., dissenting). In *Appeal of Terminal Wine Co.,* 1 B.T.A. 697, 701 (1925), the Board of Tax Appeals construed the meaning of the term "determine" as applied to deficiency determinations: "By its very definition and etymology the word 'determination' irresistibly connotes consideration, resolution, conclusion, and judgment."

■ The term "deficiency" is defined in section 6211(a) as the amount by which tax due exceeds "the amount shown as the tax by the taxpayer upon his return" (provided that a return showing an amount has been filed), plus previously assessed deficiencies over rebates made. A literal reading of relevant code sections, and the absence of evidence of contrary legislative intent, leads us to conclude that the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has "determined" a "deficiency" in respect to that taxpayer.[8] To hold otherwise would entail ignoring or

8. In construing section 6212(a), we follow some basic, yet fundamental, rules:

As in all cases including statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337 [99 S.Ct. 2326, 2330, 60 L.Ed.2d 931] (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9 [82 S.Ct. 585, 591, 7 L.Ed.2d 492] (1962). Thus, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,*

447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).
*American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982).

The dissent complains that we are "overload[ing]" the statutory requirement of a 'determination' of a deficiency with burdensome substantive content." Dissent at 1372. On the contrary, we work on the premise that Congress does not use words idly, and that "determination" is not devoid of content. If, in fact, that which is required by the unambiguous terms of the statute is more burdensome than Congress envisioned or intended, it is Congress, not the courts, that must remedy the problem.

judicially rewriting the plain language of the Internal Revenue Code.[9]

This reading of the Code is not a new one. Almost sixty years ago, the Board of Tax Appeals, while refusing to examine the intent, motive or reasoning of the Commissioner, emphasized that

> the statute clearly contemplates that before notifying a taxpayer of a deficiency and hence before the Board can be concerned, a determination must be made by the Commissioner. This must mean a thoughtful and considered determination that the United States is entitled to an amount not yet paid. If the notice of deficiency were other than the expression of a *bona fide* official determination, and were, say, a mere formal demand for an arbitrary amount as to which there were substantial doubt, the Board might easily become merely an expensive tribunal to determine moot questions and a burden might be imposed on taxpayers of litigating issues and disproving allegations for which there had never been any substantial foundation.

*Couzens v. Commissioner,* 11 B.T.A. 1040, 1159–60 (1928).

Recently, taxpayers who had invested in a "tax shelter" known as the "Liberty Financial 1983 Government Securities Trading Strategy" argued that so-called pre-filing notifications (PFNs) sent to them by the IRS were in fact deficiency notices entitling them to a Tax Court redetermination. The notices, which in most if not all cases were received after filing, informed the taxpayers that the IRS believed that deductions or credits claimed pursuant to Liberty Financial were not allowable; that the IRS would review the taxpayers' deductions and reduce returns or adjust the returns as required; that various penalties could be assessed; and that the taxpayers might wish to amend previously filed returns. *Abrams v. Commissioner,* 787 F.2d 939, 940–41 (4th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). In agreeing with the IRS that the PFNs did not qualify as deficiency notices, the Fourth Circuit found the obvious lack of an actual determination of deficiency crucial:

> As the letter ... made pellucidly clear, examination of the returns of each individual taxpayer had not as yet been made. The most important observation to be made about the letter is that it left no doubt that, as yet, there had been no general review of any return, no computation of any deficiency nor reduction in refunds to which the taxpayers might otherwise be entitled. It was in essence only fair warning of what the taxpayers ... might expect.

*Abrams,* 787 F.2d at 941. Similarly, the Eleventh Circuit found the lack of a determination dispositive: "We cannot conclude that a PFN is a notice of deficiency absent a clear indication that the IRS has reviewed the PFN recipient's return and determined that a deficiency of a stated amount exists." *Benzvi v. Commissioner,* 787 F.2d 1541, 1543 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986).

 These cases inform our judgment here. They support the view that the "determination" requirement of section 6212(a) has substantive content.[10] The Commis-

---

**9.** The dissent, characterizing the deficiency notice as a "'ticket' to the tax court" suggests that the majority fails "to grasp the function of the deficiency notice." *Dissent* at 1372. What the dissent fails to grasp, however, is that processes that may "serve their intended purposes" nonetheless may be legally insufficient. For example, notice by telephone would not suffice if written notice were required. Here, the statute requires that the Commissioner make a determination. None was made. The fact that the taxpayers received a deficiency notice does not cure the failure to make a determination.

The dissent in looking only to the fact that notice was sent skips over the Commissioner's failure to make the statutorily required determination. We readily agree with the dissent that in the usual case the sending of the notice of deficiency presumes a determination. *See supra* note 6. Where, however, the notice belies that presumption, it is both reasonable and necessary that the Commissioner demonstrate his compliance with the statute.

**10.** It is, of course true, as the dissent points out, that Tax Court jurisdiction does not depend on the existence of an actual deficiency. Dissent at 1372 (quoting *Stevens v. Commissioner,* 709 F.2d 12, 13 (5th Cir.1983)). It is the purpose of the Tax Court to determine whether the Commissioner's determination is correct. *Stevens,* 709 F.2d at 13. We agree more fully, however, with the passage quoted in the dissent when that passage is quoted in full: "'[I]t is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a

sioner's and the dissent's contention that the issuance of a formally proper notice of deficiency[11] of itself establishes that the Commissioner has determined a deficiency must be rejected. To hold otherwise, would read the determination requirement out of section 6212(a).[12]

■ Finally, the Commissioner asserts that the proper remedy in this case is to eliminate the presumption of correctness that normally attaches to deficiency determinations, *see, e.g., Dix v. Commissioner*, 392 F.2d 313 (4th Cir.1968), not to dismiss for lack of jurisdiction. He relies, however, on cases that challenge the correctness of the determination, and not its existence. The Commissioner's belated willingness to assume the burden of proof before the Tax Court cannot cure his failure to determine a deficiency before imposing on taxpayers the obligation to defend themselves in potentially costly litigation in Tax Court. Jurisdiction is at issue here. Failure to comply with statutory requirements renders the deficiency notice null and void and leaves nothing on which Tax Court jurisdiction can rest. *See Sanderling Inc. v. Commissioner*, 571 F.2d 174, 176 (3d Cir.1978) ("The Tax Court has held that it has no jurisdiction where the deficiency notice does not cover a proper taxable period.") (citing *Columbia River Orchards, Inc. v. Commissioner*, 15 T.C. 253 (1950));

*McConkey v. Commissioner*, 199 F.2d 892 (4th Cir.1952), *cert. denied*, 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1355 (1953) (where taxpayer paid alleged deficiency before notice of deficiency was mailed, Tax Court lacked jurisdiction as there was no deficiency on which the court's jurisdiction could operate); *United States v. Lehigh*, 201 F.Supp. 224 (W.D.Ark.1961) (statement of "Income Tax Due" was invalid deficiency notice where it was not labeled as a deficiency notice, incorrectly stated the tax year involved, and was confusing in that it did not provide certain figures that the terms of the statement said were provided). *Cf. Mall v. Kelly*, 564 F.Supp. 371 (D.Wyo. 1983) (deficiency assessments void where IRS had failed to meet requirement of reasonably and diligently determining and mailing sufficient notice to taxpayers' last known address).

■ Section 6212(a) of the Internal Revenue Code requires the Commissioner to determine that a deficiency exists before issuing a notice of deficiency. Because the Commissioner's purported notice of deficiency revealed on its face that no determination of tax deficiency had been made in respect to the Scars for the 1978 tax year, it did not meet the requirements of section 6212(a). Accordingly, the Tax Court should have dismissed the action for want of jurisdiction.[13]

---

predicate for Tax Court jurisdiction.'" *Id.* (quoting *Hannan*, 52 T.C. at 791).

**11.** In the case before us the Commissioner argues that, because the notice contained the Taxpayers' names, social security number, the tax year in question, and "the" amount of deficiency, it was "clearly sufficient." It is quite clear, however, that the notice did not contain *the* amount of deficiency, but rather contained *an* amount unrelated to any deficiency for which the Scars were responsible.

**12.** Judge Sterrett, in dissenting, offered a sample of a valid deficiency letter under the statutory construction urged by the IRS and accepted by the Tax Court:

Dear Taxpayer:

There is a rumor afoot that you were a participant in the Amalgamated Hairpin Partnership during the year 1980. Due to the press of work we have been unable to investigate the accuracy of the rumor or to determine whether you filed a tax return for that year. However, we are concerned that the statute of limitations may be about to expire with respect to your tax liability for 1980.

Our experience has shown that, as a general matter, taxpayers tend to take, on the average, excessive (unallowable) deductions, arising out of investments in partnerships comparable to Amalgamated that aggregate some $10,-000. Our experience has further shown that the average investor in such partnerships has substantial taxable income and consequently has attained the top marginal tax rate.

Accordingly, you are hereby notified that there is a deficiency in tax in the amount of $7,000 due from you for the year 1980 in addition to whatever amount, if any, you may have previously paid.

Sincerely yours,

Commissioner of Internal Revenue

*Scar*, 81 T.C. at 869 (Sterrett, J., dissenting).

**13.** *Cf. United States v. Lehigh*, 201 F.Supp. 224, 234 (W.D.Ark.1961) ("The procedures set forth in the Internal Revenue Code were prescribed for the protection of both Government and taxpayer. Neglect to comply with those procedures may entail consequences which the ne-

Petition for review granted.

**CYNTHIA HOLCOMB HALL**, Circuit Judge, dissenting:

Today, the majority fortifies the impediments to tax collection on behalf of errant taxpayers seeking "no taxation without litigation." R. Jackson, *Struggle for Judicial Supremacy* 141 (1941). I believe the majority undermines the jurisdiction of the Tax Court by constructing a superfluous yet substantial hurdle to its jurisdiction. In reaching the conclusion that section 6212(a) of the Internal Revenue Code, 26 U.S.C. § 6212(a), imposes a substantive requirement on the Commissioner of the Internal Revenue Service to prove that he has reviewed specific data before making a determination, the majority eagerly expands jurisdictional requirements while discarding the carefully-honed and expedient jurisdictional rules that exist.

I

The majority first turns a blind eye to reality when it finds that the incorrect explanation for the deficiency "[makes] it patently obvious that no determination has in fact been made." *See ante* at 1367. The 1978 tax return of taxpayers Howard and Ethel Scar was hardly an unlikely object of the Commissioner's suspicion. In 1977 the taxpayers participated in a videotape tax shelter, investing $6,500 in cash, signing a promissory note for $93,500, and then deducting over $15,000 in depreciation and other expenses from their 1977 tax return based on their "investment." The Commissioner audited this 1977 return and determined a deficiency of $15,875, finding that the taxpayers' "purchase of the film was lacking in profit motive and economic substance other than the avoidance of tax." The Commissioner mailed a notice of deficiency to the taxpayers, who responded by filing a petition for redetermination of the deficiency with the Tax Court on June 30, 1981.

The taxpayers' 1978 return included additional deductions totaling $27,040 based upon the now suspect videotape shelter. In all likelihood, the Commissioner's decision to issue a second deficiency notice regarding this 1978 return resulted from the continuation of the audit process which began with the previous year's tax return. This second deficiency notice, however, incorrectly explained the deficiency in terms of a Nevada mining venture in which the taxpayers had never participated. At the Tax Court hearing on March 21, 1983, counsel for the Commissioner explained that this misdescription resulted from a technical error: an IRS employee had transposed a code number, resulting in the incorrect identification of the basis of the deficiency as being the Nevada mining project instead of the videotape tax shelter. The Commissioner argues that a witness able to testify to this numerical error was present at the hearing, but was not called since the taxpayers did not object to this explanation of the IRS' mistake.

The procedural history of the taxpayers' efforts to challenge the 1978 deficiency consists largely of motions attempting to exploit this apparent mishap. These motions evince the tactics of delay employed by "every litigious man or every embarrassed man, to whom delay [is] more important than the payment of costs." *Tennessee v. Sneed*, 96 U.S. (6 Otto) 69, 75, 24 L.Ed. 610 (1877).

II

The majority correctly recognizes that section 6212(a) authorizes the Commissioner to send a notice of deficiency only if he first determines that there is a deficiency. The taxpayers themselves concede that the notice of deficiency in this case satisfied section 6212(a)'s formal requirements of stating the amount of the deficiency and the taxable year involved. *See Stamm International Corp. v. Commissioner*, 84 T.C. 248, 253 (1985); *Foster v. Commis-*

glecting party must be prepared to face, whether such party be the taxpayer or the Government.")

*sioner,* 80 T.C. 34, 229–30 (1983), *aff'd in part and vacated in part,* 756 F.2d 1430 (9th Cir.1985), *cert. denied,* ——— U.S. ———, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986); *Ziegler v. Commissioner,* 49 T.C.M. (CCH) 182, 189 (1984); *Stevenson v. Commissioner,* 43 T.C.M. (CCH) 289, 290–91 (1982) (citing *Commissioner v. Stewart,* 186 F.2d 239, 242 (6th Cir.1951)). *See also* Andrews, *The Use of the Injunction as a Remedy for an Invalid Federal Tax Assessment,* 40 Tax L. Rev. 653, 661 n. 39 (1985).

The majority then proceeds to overload the statutory requirement of a "determination" of a deficiency with burdensome substantive content. First, the majority ignores the rule that a deficiency notice need not contain any explanation whatsoever. *Abatti v. Commissioner,* 644 F.2d 1385, 1389 (9th Cir.1981); *Barnes v. Commissioner,* 408 F.2d 65, 69 (7th Cir.), *cert. denied,* 396 U.S. 836, 90 S.Ct. 94, 24 L.Ed.2d 86 (1969); *Stevenson,* 43 T.C.M. (CCH) at 290. *See also* B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 115.2.2 at 115–14 (1981) (*"Federal Taxation"*).

Second, the majority fails to grasp the function of the deficiency notice. It is nothing more than "a jurisdictional prerequisite to a taxpayer's suit seeking the Tax Court's redetermination of [the Commissioner's] determination of the tax liability."

*Stamm,* 84 T.C. at 252. "[T]he notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." *Olsen v. Helvering,* 88 F.2d 650, 651 (2nd Cir.1937).[1] Nothing more is required as a predicate to Tax Court jurisdiction.[2] In fact, this Circuit has recognized that " 'it is not the *existence* of a deficiency that provides a predicate for Tax Court jurisdiction.' " *Stevens v. Commissioner,* 709 F.2d 12, 13 (5th Cir.1983) (quoting *Hannan v. Commissioner,* 52 T.C. 787, 791 (1969) (emphasis in original)). The *Stevens* court lucidly commented:

That seems obvious: the very purpose of the Tax Court is to adjudicate contests to deficiency notices. If the existence of an error in the determination giving rise to the notice deprived the Court of jurisdiction, the Court would lack power to perform its function.

709 F.2d at 13.

Therefore, the deficiency notice is effectively the taxpayer's "ticket" to the Tax Court. This "ticket" gives the taxpayer access to the only forum where he can litigate the relevant tax issue without first paying the tax assessed. If a properly-addressed deficiency notice states the amount of the deficiency, the taxable year involved, and notifies the taxpayer that he has 90

---

**1.** The notice of deficiency mailed to the taxpayers included two forms: Form 892 and Form 5278. Form 892 is the basic deficiency notice. It includes the taxpayer's name, social security number, amount of the deficiency for the taxable year, and a short explanation of the taxpayer's options. Here, the Commissioner properly completed the Form 892. If the Commissioner had mailed only the Form 892, and nothing else, it is clear that this would have been a valid deficiency notice. *Abatti,* 644 F.2d at 1389; *Barnes,* 408 F.2d at 69; *Stevenson,* 43 T.C.M. (CCH) at 290. The Tax Court's jurisdiction would have been established, even though the Commissioner relied on the wrong tax shelter in making the determination.

**2.** "It may well be true that the [Commissioner] erred in his determination that a deficiency existed for this period. But when he once determined that there was a deficiency, that fact gives us jurisdiction to determine whether or not it was correctly arrived at." *H. Milgrim & Bros. v. Commissioner,* 24 B.T.A. 853, 854 (1931).

The key question is whether the inclusion of an erroneous Form 5278, which purports to explain the deficiency in terms of an unrelated tax shelter, invalidates the deficiency notice. I believe the inclusion of the wrong Form 5278 constitutes a preparation error which does not invalidate the deficiency notice. "An error in a notice of deficiency, which otherwise fulfills its purpose, will be ignored where the taxpayer is not misled thereby and is provided by it with information sufficient for the preparation of his case for trial." *Meyers v. Commissioner,* 81 T.C.M. (P–H) 276, 278 (1981). Here, the taxpayers were not misled by the stray Form 5278 because they had notice from the IRS that a mistake had been made before the Tax Court had set a trial date for either the 1977 or 1978 disputes concerning the videotape tax shelter.

days from the date of mailing in which to file a petition for redetermination, then the notice is valid. The merits of the Commissioner's deficiency should not be litigated in the form of a motion to dismiss for lack of jurisdiction; once jurisdiction has been established, both sides will have the opportunity to press their views before the Tax Court.

The majority escapes from under the undesirable weight of authority requiring that the validity of a deficiency notice be determined primarily by its form by distinguishing these cases as not addressing the challenge that no determination was made by the Commissioner. In light of the emphasis of this authority on the *form* of the deficiency notice, I cannot agree with such a strained interpretation of these cases. *See* B. Bittker, *Federal Taxation* ¶ 115.2.2 at 115–12 ("[t]he requirement of an IRS *determination* coalesces with the requirement of a *notice* of deficiency, since the usual evidence that a deficiency has been 'determined' is the notice") (emphasis in original).

For example, in *Hannan v. Commissioner*, 52 T.C. 787 (1969), the Tax Court concluded that there was a valid notice of deficiency, despite the Commissioner's contentions that he neither determined a deficiency nor sought to collect one.[3] The Tax Court rejected the Commissioner's position and found it had jurisdiction:

Here petitioners were sent a letter which admittedly meets all the formal requirements of a statutory notice of deficiency, notifying them that "We [respondent] have determined the income tax deficiencies shown above" and listing tax deficiencies and additions to tax under section 6651(a). This was a determination of a deficiency in tax, even though, as respondent argues, on trial it may develop that there is in fact no deficiency.

*Id.* at 791 (footnotes omitted).

The majority misreads *Hannan* in denying that *Hannan* stands for the proposition that deficiency notices are to be judged on their face, rather than on the substance of the Commissioner's determination. *See ante* at 1367 n. 7. It is true that the Tax Court partly explained its decision by stating that there was no proof that the Commissioner was not in fact asserting a deficiency and that the taxpayers could only protect their interests by filing a petition. Although one might read this statement as implying that the Tax Court based its decision on more than a facial examination of the deficiency notice, I understand the Tax Court to mean that because the notice was ambiguous, the taxpayers had no alternative but to file a petition. This concern does not detract from the court's emphasis on the *form* of the deficiency notice.

Judging the deficiency notice in this case by the standards discussed above, I believe that the notice warned the taxpayers that the Commissioner had, rightly or wrongly, determined a deficiency and that the notice complied with the formal requirements of section 6212(a). The Commissioner clearly

---

**3.** In *Hannan*, the Commissioner assessed additions to tax for late filing. Under 26 U.S.C. § 6662 (formerly section 6659), if additions to tax are not attributable to a deficiency, the Commissioner can immediately assess and collect the additions. On the other hand, if the additions are attributable to a deficiency the Commissioner is required to follow statutory deficiency procedures. In *Hannan*, the Commissioner sent taxpayers a letter, on the form used for deficiency notices, setting forth amounts referred to as "deficiencies" in one column, together with the "additions to tax" in the next column.

The Commissioner argued in the Tax Court that no deficiency actually existed and therefore the Tax Court lacked jurisdiction. The Commissioner's attorney stated that the notice of deficiency was issued in error. The figures listed in the "deficiency" column correspond to the figures that the taxpayers had reported as tax due on their returns. The Commissioner presumably was contending that he had used the notice of deficiency form in order to collect additions to tax, and not to notify taxpayers of the existence of deficiencies. Because the Commissioner was not imposing taxes in excess of what taxpayers showed on their returns (i.e., he used the wrong form), he argued there was no deficiency.

determined that the taxpayers had invested in a tax shelter without economic substance in order to avoid taxes. The inclusion of an erroneous explanation of the basis of the deficiency should not in itself deprive the Tax Court of jurisdiction to decide the question of whether the Commissioner can sustain the asserted deficiency.

The majority contends that here, it "need not look beyond the notice sent to the taxpayers to determine its invalidity." *See ante* at 1368. This, however, is exactly what the majority requires when it concludes that the "determination" requirement is only satisfied where the Commissioner shows he has determined a deficiency with respect to a particular taxpayer beyond the notice itself.[4]

As a matter of tax policy, the rule against looking behind the deficiency notice appears to be well-grounded in the administrative necessities of the Commissioner's job. The Commissioner must administer tens of thousands of deficiency notices per year. A requirement that he prove the basis of his determination before the Tax Court can assert jurisdiction would unduly burden both the Commissioner and the Tax Court.

In addition, the majority's ruling that the inclusion of an erroneous explanation invalidates a deficiency notice creates an incentive for the Commissioner not to disclose his theory for asserting a deficiency when he sends the deficiency notice. If the Commissioner discloses his theory at this stage, the majority's rule invites every taxpayer to litigate whether the Commissioner has made a determination before litigating the merits.[5] Because it is to the taxpayer's

---

**4.** The majority in footnote 6 makes much of the government's statement that, "In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum rate of 70%." The majority points to this statement as evidence supporting their conclusion that the Commissioner did not make a determination. I disagree.

Although the "unavailability" of the Scars' return may indicate that the Scars' original paper return was not before the Commissioner, it does not show that specific data on that return or relating to the video-tape tax shelter was not considered. Due to the computerization of the IRS, the Commissioner no longer operates from original paper returns. *See, e.g.,* Murphy, *Glitches and Crashes at the IRS,* TIME, Apr. 29, 1985, at 71; *New Machines Helping IRS,* Dun's Business Month, Jan. 1984, at 24; IRS, *1980 Annual Report,* 9, 14, 42–43 (1981). With well over 100 million income tax returns plus an even larger number of information returns, such as Forms W–2's and 1099's, being filed annually, it is no wonder the Commissioner has turned to the computer. *See* Klott, *Fewer IRS Workers to Process Tax Returns,* N.Y. Times, Dec. 24, 1986, at 30, col. 3; IRS, *1981 Annual Report* 5, 42–43 (Table 6) (1982). When a return is filed in a Service Center, pertinent summary data is entered into the computer system. *1980 Report* at 14; Quaglietta, *How IRS Service Centers Process Returns,* 16 Prac.Acct. 63 (1983). Such summary data includes the fact that a return was filed, whether the tax was paid or a refund check was mailed, and other data needed to match information returns with the taxpayer's return. *See 1980 Report* at 4, 14; Cloonan, *Compliance Programs,* 16 Prac.Acct. 67 (1983). This matching is done by computer.

*1980 Report* at 4, 14; Walbert, *A Net Too Wide,* FORBES, Mar. 12, 1984, at 154. It is conceivable that the Commissioner had enough information on the computer to match information regarding both the tax shelter promoted by Executive Productions, Inc. and the Scars' suspect 1977 return to their 1978 income tax taxpayer's return, but not enough to determine the exact amount of a deficiency without calling up from storage the actual return. Thus, the Commissioner assessed the Scars at the 70% rate.

As of 1980, the Commissioner had identified approximately 27,000 abusive tax shelters. *1980 Report* at 3. In light of this number, the punching of the wrong computer key during an audit at the partnership level is a viable explanation for the unfortunate error of one of the 26,999 inapplicable tax shelters popping up and then being entered on the Scars' Form 5278.

So, as a result of the need to computerize information regarding the millions of filed returns and the huge number of tax shelters, we have a reasonable explanation for the two errors on the gratuitously prepared Form 5278 (the wrong shelter and the wrong tax rate of 70%). The taxpayer could have contested these errors and probably would have settled the amount of the tax due promptly. The importance of these errors is further undermined by the fact that they are found in Form 5278, which the Commissioner is not required to send with the basic deficiency notice, Form 892. *See ante* n. 1.

**5.** This "invitation to litigation" represents a major step backward for those of us who believe that litigation should be streamlined, attorneys' fees should be kept within reasonable bounds, and courts should not be further over-burdened.

advantage that the Commissioner disclose his theory when the notice is sent, I believe it is undesirable to establish a rule which would discourage him from doing so. *See Stewart v. Commissioner*, 714 F.2d 977, 986 (9th Cir.1983).

I view this case as presenting two related policy goals. One goal is to ensure that early in the assessment procedure each individual taxpayer receives fair notice as to the theory on which the Commissioner based his deficiency. The other goal is to encourage the Commissioner to disclose the theory on which he intends to rely in the deficiency notice whenever possible. However, because the Commissioner is not required to disclose his theory in the notice, the majority's rule that invalidates a deficiency notice accompanied with an erroneous description encourages the Commissioner to issue deficiency notices without *any* explanation. Such a rule detracts from the goal of early notice and taxpayers, on the whole, will suffer because the Commissioner is likely to use the deficiency notice solely for jurisdictional purposes and only thereafter reveal his reasons for issuing the notice. I believe that preserving the Tax Court tradition of not looking behind the deficiency notice promotes the goal of ensuring early notice to the taxpayer.

Finally, alternative remedies exist to protect the taxpayer's interests besides dismissal of the case for lack of jurisdiction. If the taxpayers are confused by the Commissioner's theory. or explanation supporting the deficiency, they may seek clarification prior to trial. The Tax Court Rules "contemplate that after the case is at issue the parties will informally confer in order to exchange necessary facts, documents, and other data with a view towards defining and narrowing the areas of dispute. Rules

38, 70(a)(1), 91(a)." [6] *Foster*, 80 T.C. at 230. *See also Stevenson*, 43 T.C.M. (CCH) at 291. Here, the informal contacts between the parties resulted in the Commissioner's disclosure of his mistake within two months of when the taxpayers filed their petition for redetermination in the Tax Court.

Furthermore, the presumed correctness of the Commissioner's deficiency notice disappears if the deficiency is arbitrary or capricious, since the burden of proof then shifts to the Commissioner. *Helvering v. Taylor*, 293 U.S. 507, 513–16, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935); *Weimerskirch v. Commissioner*, 596 F.2d 358, 362 & n. 8 (9th Cir.1979); *Jackson v. Commissioner*, 73 T.C. 394, 401 (1979). *See also* Rule 142(a).

These measures are more than adequate to prevent the Commissioner from littering the country with baseless deficiency notices. *Scar*, 81 T.C. at 869 (Sterratt, J., dissenting). The precedent holding that the validity of the deficiency notice is to be determined on its face was effective in furthering policy goals which benefit the taxpayer and the public. The majority's opinion sabotages the machinery of tax collection, thereby portending injury to the taxpayer and to the public. I therefore dissent.

---

**6.** Any citation to a Rule refers to the Tax Court Rules of Practice and Procedure (codified at 26 U.S.C. § 7453).