T.C. Memo. 2001-255


UNITED STATES TAX COURT


JAMES D. AND RITA K. SNYDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11638-99.                    Filed September 28, 2001.


        R attributed to Ps' various items with respect to
two trusts, on the grounds that such trusts were either
shams or grantor trusts, on the ground that the
assignment of income doctrine applied, or on the ground
that Ps failed to report certain trust items. R
determined a sec. 6662(a), I.R.C., accuracy-related
penalty against Ps. At trial, R moved for penalties
on account of delay and for other reasons, under
sec. 6673(a)(1), I.R.C.
        1. <u>Held</u>: Trust income attributed to Ps for
substantially the reasons stated by R.
        2. <u>Held</u>, <u>further</u>, Ps are liable for accuracy-
related penalties under sec. 6662(a), I.R.C.
        3. <u>Held, further</u>, for various reasons, Ps are
liable for a penalty under sec. 6673(a)(1), I.R.C.

James D. and Rita K. Snyder, pro se.

Dale A. Suzi, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency dated March 31, 1999 (the notice), respondent determined deficiencies in, and an addition and penalties with respect to, petitioners' 1992 through 1995 Federal income taxes, as follows:

|  |  | Sec. 6651(a) | Sec. 6662(a) |
| Year | Deficiency | Addition to Tax | Penalty |
| 1992 | $70,215 | -- | $14,043 |
| 1993 | 90,783 | $4,547 | 18,157 |
| 1994 | 87,301 | -- | 17,460 |
| 1995 | 120,866 | -- | 24,173 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  For convenience, monetary amounts have been rounded to the nearest dollar amount.

At the conclusion of the trial in this case, respondent moved that the Court impose penalties under section 6673(a)(1), which provides penalties for procedures instituted primarily for delay and for other reasons.  We took that motion under advisement.  Respondent has conceded the addition to tax for 1993, determined under section 6651(a) for failure to file a return on time.  We accept that concession.

We must decide the following issues for each of the years in issue:[1]

Whether petitioners understated their gross income by omitting certain items reported by petitioners on returns made by them for two trusts: Complete Connections Trust and J&R Trust.[2]

Whether petitioners are liable for self-employment taxes (and are entitled to related deductions) on account of each's share of the trust items respondent determined petitioners omitted from gross income.[3]

---

[1] In their reply brief, petitioners state: "The statute of limitations has expired for the years in question. Respondent has failed to provide the petitioner any facts or evidence showing where the statute of limitation has been extended for any of the tax years in question." In pertinent part, Rule 39 provides that a party shall set forth in the party's pleading any matter constituting an affirmative defense, "including * * * the statute of limitations". The petition does not raise any issue with respect to the statute of limitations, and we cannot conclude that such issue was tried by consent. See Rule 41(b). The affirmative defense of statute of limitations is not before the Court. In any event, it appears that sec. 6501 would not limit the assessment or collection of any of the tax liabilities here in issue. See sec. 6501(a), (e)(1).

[2] In naming, describing, or referring to Complete Connections Trust and J&R Trust, we use the term "trust" for convenience, without intending a finding that, in either case, a trust relationship did, in fact, exist.

[3] The amount of petitioners' liability for self-employment taxes and the amount of the deductions under sec. 164(f) to which petitioners are entitled are computational matters, the resolution of which will depend upon our disposition of the gross income issue. Petitioners have not separately challenged such liability and deduction, and we do not further discuss those items.

Whether the exemptions claimed by petitioners must be reduced on account of any increase in their adjusted gross income.[4]

Whether petitioners are liable for accuracy-related penalties under section 6662(a).

Finally, we must decide whether petitioners are liable for a penalty under section 6673(a)(1).

## FINDINGS OF FACT

Some facts are stipulated and are so found. The first and second stipulations of facts, filed by the parties, with accompanying exhibits, are incorporated herein by this reference.

### Residence

At the time the petition was filed, petitioners resided in Paso Robles, California.

### Complete Connections

In 1985, petitioner Rita Snyder (Rita Snyder) applied to the City of El Paso de Robles, California (the city), for a business license. On the application form for that license (the application), she stated that she was the owner of the business in question, its name was "Complete Connection", and the type of business to be licensed was "business services". In 1988, she responded to a questionnaire from the city with respect to that

---

[4] This also is a computational matter, which petitioners have not separately challenged, and we will not further discuss it.

business by stating that its name was "Complete Connections", it was owned by her and petitioner James Snyder (James Snyder), its business was "Income Tax/Accounting", and it was a sole proprietorship. On August 31, 1992, she applied for a renewal business license for the business named "Complete Connections", again stating that it was owned by her and James Snyder, and describing its business as "Computerized Accounting and Tax Services". On January 10, 1996, James Snyder filed a statement, "Fictitious Business Name Statement", with the County of San Luis Obispo, California. In that statement, Mr. Snyder stated that the fictitious business name was "Complete Connections Computer Systems", the name of the registrant was "James D. Snyder", and the business in question was conducted by an individual.

Petitioners' Federal Income Tax Returns

For 1991, petitioners made a joint return of income on Form 1040, U.S. Individual Income Tax Return (the 1991 Form 1040). Attached to the 1991 Form 1040 is a Schedule C, Profit or Loss From Business (Sole Proprietorship) (the 1991 Schedule C). On the 1991 Schedule C, petitioners state that they are the proprietors of a business named "Complete Connections", the business of which is computer sales, bookkeeping, and taxes. The 1991 Schedule C shows gross receipts of $228,858, cost of goods sold of $113,974, other income of $186, expenses of $82,267, and

a net profit of $32,803.  The 1991 Form 1040 reports no income (or any other item) from any trust.

For 1992 through 1995, petitioners also made joint returns of income on Forms 1040, U.S. Individual Income Tax Returns (the 1992 through 1995 Forms 1040).  Except for 1995, none of those returns reports any item identified with a business named "Complete Connections".  For 1995, petitioners reported $7,750 of wages, $3,750 of which is identified on a Form W-2, Wage and Tax Statement, 1995, as being paid by Complete Connections Trust to James Snyder.  The 1992 through 1995 Forms 1040 do, however, report the following amounts of income from J&R Trust:

| Year | Amount |
|------|--------|
| 1992 | $15,219 |
| 1993 | 11,773 |
| 1994 | 14,950 |
| 1995 | 18,659 |

Federal Income Tax Returns for Complete Connections Trust

Beginning with 1992, and continuing for 1993, 1994, and 1995, either Rita or James Snyder made a return of income on Form 1041, U.S. Fiduciary Return of Income (for 1992 and 1993) or U.S. Income Tax Return for Estates and Trust (for 1994 and 1995), claiming to report the income of Complete Connections Trust, a complex trust, created on January 1, 1992, and carrying on a business of the same name (such returns being referred to, collectively, as the Complete Connections Trust returns).  Each of the Complete Connections Trust returns is signed by one or the

other of James or Rita Snyder as a fiduciary.  For 1992, one "Kevin R. Richards" is reported as a fiduciary, and, for 1995, such person is reported as "trustee".  The business carried on under the name Complete Connections is described as, for 1992, bookkeeping, taxes, and computer sales and, for the remaining years, "business services."  The Complete Connections Trust returns report the following amounts of gross receipts and miscellaneous income from such business and interest income unrelated to such business:

| Year | Gross Receipts & Misc. Items | Interest | Total |
|------|------------------------------|----------|-------|
| 1992 | $183,482 | -- | $183,482 |
| 1993 | 229,466 | $159 | 229,625 |
| 1994 | 214,517 | 221 | 214,738 |
| 1995 | 295,903 | -- | 295,903 |

The Complete Connections Trust returns report the following costs of goods sold, expenses, and net profits:

| Year | Cost of Goods Sold | Expenses | Net profit |
|------|--------------------|----------|-----------| 
| 1992 | $73,027 | $80,028 | $30,427 |
| 1993 | 107,168 | 84,013 | 38,285 |
| 1994 | 98,830 | 93,440 | 22,247 |
| 1995 | 147,637 | 123,466 | 24,800 |

The Complete Connections Trust returns report the following deductions on account of distributions of income to J&R Trust:

| Year | Amount |
|------|--------|
| 1992 | $30,427 |
| 1993 | 38,444 |
| 1994 | 21,608 |
| 1995 | 24,800 |

For each trust year in question, such income distribution deduction, along with a charitable contribution deduction of $860 for 1994, was sufficient to reduce reported taxable income to zero. A tax liability of zero was reported for each trust year, 1992 through 1995.

## Rita Snyder's Business

During the years in issue, Rita Snyder engaged in business as a paid tax return preparer, under the name "Complete Connections".

## Complete Connections Checking Account

A business checking account, account number 002-502704, in the name of "Complete Connections" (the Complete Connections checking account), was opened at Santa Lucia National Bank no later than August 9, 1990, and was closed on January 28, 1999. The signature card for that account describes the account as a trust account and shows as signatories both Rita and James Snyder, each of whom is described as a manager. All checks drawn on the Complete Connections checking account during 1995 were signed by either James or Rita Snyder.

## Federal Income Tax Return for J&R Trust

Beginning with 1992, and continuing for 1993, 1994, and 1995, either Rita or James Snyder made a return of income on Form 1041, U.S. Fiduciary Return of Income (for 1992 and 1993) or U.S. Income Tax Return for Estates and Trust (for 1994 and 1995),

claiming to report the income of J&R Trust, a complex trust, created on January 1, 1992, and carrying on (1) a business named "J & R" and (2) other activities (such returns being referred to, collectively, as the J&R Trust returns). Each of the J&R Trust returns is signed by one or the other of James or Rita Snyder as a fiduciary. For 1992, one "Kevin R. Richards" is reported as a fiduciary, and, for 1995, one "David J. Snyder" is reported as "trustee". The business carried on under the name J & R is described as, for 1992, "management services" and, for the remaining years, "investments". The J&R Trust returns report the following amounts of gross receipts from such business and interest income unrelated to such business:

| Year | Gross Receipts | Interest | Total |
|------|---------------|----------|-------|
| 1992 | -- | -- | -- |
| 1993 | $11,606 | $159 | $11,765 |
| 1994 | 15,000 | 334 | 15,334 |
| 1995 | 8,800 | 242 | 9,042 |

With respect to such business, the following expenses and net profits are reported:

| Year | Expenses | Net profit |
|------|----------|------------|
| 1992 | $20,512 | ($20,512) |
| 1993 | 28,096 | (16,490) |
| 1994 | 4,233 | 10,767 |
| 1995 | 4,467 | 4,446 |

The J&R Trust returns also report net rental income and distributions received from Complete Connections Trust in the following amounts:

| Year | Rental | Distribution |
|------|--------|--------------|
| 1992 | $11,791 | $30,427 |
| 1993 | 10,200 | [1]38,285 |
| 1994 | (5,600) | [1]21,395 |
| 1995 | 912 | 24,800 |

[1] The difference between this amount and the deduction claimed by Complete Connections Trust for a distribution of income for the year is explained by J&R Trust's separate statement of interest income for the year.

The J&R Trust returns report the following deductions on account of distributions of income to petitioners[5]:

| Year | Distribution |
|------|--------------|
| 1992 | $18,673 |
| 1993 | 27,444 |
| 1994 | 35,643 |
| 1995 | 28,441 |

For each trust year in question, such income distribution deduction, along with charitable contribution deductions of $3,033, $4,710, $1,253, and $1,959 for such years, respectively, was sufficient to reduce reported taxable income to zero. A tax liability of zero was reported for each trust year, 1992 through 1995.

---

[5] Such distributions, when reduced by (1) interest from J&R Trust reported by petitioners and (2) some or all of the categories of depreciation allocated to them by J&R Trust, equal, almost to the dollar, the income reported by petitioners as having been received by J&R Trust:

| Year | Distribution | Interest | Depreciation | Difference |
|------|--------------|----------|--------------|------------|
| 1992 | $18,673 | -- | $3,453 | $15,222 |
| 1993 | 27,444 | $76 | 15,535 | 11,773 |
| 1994 | 35,643 | 318 | 10,374 | 14,951 |
| 1995 | 28,441 | 226 | 9,555 | 18,660 |

J&R Checking Account

A business checking account, account 002-506610, in the name of "J & R 'A TRUST'" (the J&R checking account), was opened at Santa Lucia National Bank no later than February 25, 1994. The signature card for that account describes the account as a trust account and shows as signatories both Rita and James Snyder, each of whom is described as a manager. The address shown on the J&R checking account signature card, checks, and monthly statements is the same as the address shown on petitioners' tax returns. All checks drawn on the J&R checking account during 1995 were signed by either James or Rita Snyder. Such checks included checks drawn to the order of Rita Snyder, James Snyder, Robert C. Miller, D.D.S., Big Creek Lumber Co., Southern California Gas Co., Pacific Bell, All States, Wal Mart, Home Furniture Gallery, Dan's Economy Tires, Albertsons, Paso Robles Waste Disposal, New Covenant Church of God, K Mart, Steven J. Harmon, M.D., Central Coast Pathology, Payless Shoes, Musician's Emporium, Bakery Works, and Bauer Speck Student Council.

Petitioners' Residence

Petitioners purchased their personal residence (the residence), located at 386 Quarterhorse Lane, Paso Robles, California, on November 9, 1992. The grant deed by which they acquired the residence (the first grant deed) shows the grantees as "James D. Snyder and Rita K. Snyder, husband and wife as

tenants in common".  By grant deed dated November 11, 1992 (the second grant deed), petitioners (in the same capacity as in the first grant deed) transferred the residence to Kevin R. Richards and David J. Snyder, as trustees for J&R Trust.  The second grant deed was recorded on August 12, 1993.  Between the dates of execution and recordation of the second grant deed, by deed of trust dated June 15, 1993, and recorded June 23, 1993, petitioners, as "husband and wife", encumbered the residence to secure their indebtedness to United Savings Bank in the amount of $141,300.

Respondent's Adjustments

Attached to the notice are statements listing and explaining respondent's adjustments to petitioners' income.  Among the adjustments listed are the following, involving respondent's attribution to petitioners of income from Complete Connections Trust and J&R Trust:

| Trust | 1992 | 1993 | 1994 | 1995 |
|-------|------|------|------|------|
| Comp. Conn. | $194,205 | $229,625 | $214,738 | $295,903 |
| J&R | -- | 11,766 | 15,334 | 9,042 |

In the case of both trusts, respondent explains the adjustments as resulting from, alternatively, (1) respondent's disregard of the trust, since it "is a sham with no economic substance", (2) the status of the trust as a grantor trust, (3) application of the assignment of income doctrine (pursuant to which income is taxed to the true earner of that income), and (4) application of

sections 652(a) or 662(a) (including in the gross income of beneficiaries certain trust amounts).  Also in the case of both trusts, respondent explains that petitioners have failed to show that they are entitled to any deductions in excess of the amounts determined by respondent.

OPINION

I.  Burden of Proof

In pertinent part, Rule 142(a) provides:  "The burden of proof shall be upon the petitioner".  In certain circumstances, if a petitioner introduces credible evidence with respect to any factual issue relevant to ascertaining such petitioner's liability for tax, section 7491 places the burden of proof on respondent.  See sec. 7491(a)(1); Rule 142(a).  Section 7491 is effective with respect to examinations commenced after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 726.  Respondent concedes that the examination of petitioners commenced after July 22, 1998.

Section 7491(a)(2) establishes prerequisites (the prerequisites) to establishing that the burden of proof may lie with respondent under section 7491(a)(1).  In pertinent part, section 7491(a)(2) provides:

> (2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item; [and]

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *

The burden is on the taxpayer to show that the prerequisites are satisfied. See H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995. At trial, counsel for petitioners (who has since withdrawn as counsel) conceded that petitioners bear the burden of proof with respect to the deficiencies determined by respondent. We accept that concession and so find.[6]

Respondent bears the burden of production with respect to penalties. See sec. 7491(c).

## II. Deficiencies in Tax

### A. Introduction

#### 1. Petitioners' Arguments

Respondent has adjusted petitioners' income by attributing to petitioners items of income reported by Complete Connections Trust and J&R Trust. Respondent has done so under the various

---

[6] Even if petitioners had not (by their counsel) so conceded, there is evidence to support such a finding. For instance, petitioners failed to respond to respondent's interrogatories (and were sanctioned by the Court for such failure) and failed to cooperate with respondent in stipulating facts for trial. Respondent's motions to compel production of documents and responses to interrogatories contain a litany of petitioners' failures to provide information to respondent during the audit of their income tax returns or cooperate in preparation of this case for trial. Petitioners have provided no rebuttal to such litany.

theories set forth in our findings of fact.  In the petition, petitioners have assigned error to such adjustments but have averred no facts in support of such assignments other than facts concerning perceived procedural errors by respondent.  On brief, petitioners' principal argument is that respondent has committed procedural errors.  We distill from the petition and petitioners' briefs the following components of petitioners' argument: (1) They did not receive a valid notice of deficiency, (2) no tax has been assessed, and (3) they were denied "due process" during the examination of their returns.

### 2.  Response to Petitioners' Arguments

Respondent sees no merit in petitioners' arguments.  We agree with that observation.

### a.  Validity of Notice

Petitioners allege defects in the notice, including that it and its attachments (1) were not signed under penalties of perjury, (2) do not cite any "taxing statute" or contain "certified evidence" to support the adjustments, and (3) constitute hearsay.

A short answer to most of petitioners' complaints can be found in an opinion of the Court of Appeals for the Ninth Circuit, the Court of Appeals to which any appeal in this case likely would lie:

> The Internal Revenue Code does not require the notice
> of deficiency to be signed.  See 26 U.S.C. §6212
> ("[i]f the Secretary determines that there is a
> deficiency * * * he is authorized to send such

deficiency to the taxpayer by certified mail or registered mail"); see also Commissioner v. Oswego Falls Corp., 71 F.2d 673, 677 (2d Cir. 1934) (notice of deficiency need not be signed).  Moreover, in Scar v. Commissioner, we held that "no particular form is required for a valid notice of deficiency * * * and the Commissioner need not explain how the deficiencies were determined."  814 F.2d 1363, 1367 (9th Cir. 1987) (citation omitted).  * * *

Urban v. Commissioner, 964 F.2d 888, 889-890 (9th Cir. 1992), affg. T.C. Memo. 1991-220.  In Scar v. Commissioner, 814 F.2d 1363, 1367 (9th Cir. 1987), the Court of Appeals for the Ninth Circuit considered a notice of deficiency that, on its face, revealed that no determination of a deficiency had been made with respect to the taxpayers in question for the year in question. See id. at 1370.  The Court of Appeals held that such a notice was invalid and the petition contesting such notice should have been dismissed in the taxpayers' favor for lack of jurisdiction. See id.  Commenting on Scar, we have held:  "Where the notice of deficiency does not reveal on its face that the Commissioner failed to make a determination, a presumption arises that there was a deficiency determination."  Campbell v. Commissioner, 90 T.C. 110, 113 (1988).  We have examined the notice and, on its face, it does not reveal that respondent failed to make a determination:  It is addressed to petitioners, references their 1992 through 1995 tax years, states both that respondent has determined that petitioners owe additional tax or other amounts (or both) for such years and the size of those amounts, and sets

forth the adjustments (and explanations of those adjustments) giving rise to such determinations. Petitioners have failed to rebut the resulting presumption that respondent did determine deficiencies in petitioners' income taxes for their 1992 through 1995 taxable years.

Petitioners' hearsay objection is misplaced. The notice does not constitute hearsay, since it was not admitted into evidence for the truth of the matters asserted therein, see Fed. R. Evid. 801(c), but merely to evidence that it was issued and, thus, formed a predicate for our jurisdiction, see Rule 13(a).

### b. Assessment of Tax

Petitioners argue that, since respondent has not made an assessment of tax under section 6203, there is no deficiency and, therefore, the notice is invalid and this Court lacks jurisdiction.

Petitioners fail to understand that, generally, the determination of a deficiency in tax precedes assessment of the tax. In pertinent part, section 6212(a) provides that, if the Secretary determines that there is a deficiency in income tax, "he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail". In pertinent part, section 6213(a) then allows the taxpayer 90 days (150 days if the notice is addressed to a person outside of the United States) to file a petition in the Tax Court for review of the deficiency. Generally, section 6213(a) prohibits any assessment

from being made until either the expiration of the 90 (or 150) days or after the decision of the Tax Court becomes final.  That procedure provides an opportunity for a taxpayer to have his or her tax liability reviewed by the Tax Court before an assessment is made.  Petitioners' argument is without merit.

### c.  Audit Level Procedures

Petitioners argue that they were deprived of due process because respondent allegedly did not follow administrative procedures during the audit of their returns.

Proceedings before the Tax Court are de novo; therefore, our determination of a taxpayer's liability is based on the merits of the case and not on the record developed at the administrative level.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974); Johnston v. Commissioner, T.C. Memo. 2000-315. There is no statutory requirement that respondent must follow certain administrative procedures prior to issuing a notice. Further, this Court has held that a revenue agent's failure to follow administrative procedures prior to issuance of a notice of deficiency does not invalidate the notice.  See, e.g., Guilford v. Commissioner, T.C. Memo. 1987-535 (lack of appellate conference or 30-day letter does not affect the validity of notice).  In any event, petitioners failed to prove any irregularities in respondent's examination.

### B.  Discussion

1.  Introduction

Notwithstanding the lack of merit to petitioners' arguments, petitioners have assigned error to respondent's adjustments.  The evidence supports those adjustments, and petitioners have offered nothing in rebuttal.  Based on the facts we have found, we infer (and find) the following additional facts:  Both before and after the years in issue, petitioners carried on a proprietorship variously called "Complete Connection", "Complete Connections", or "Complete Connections Computer Systems" (without distinction, Complete Connections).  During such preceding and following years, under the name Complete Connections, petitioners provided tax preparation, bookkeeping, and accounting services, and engaged in certain computer related services.  During the years in issue, petitioners engaged in some or all of those activities and reported gross receipts from such activities and miscellaneous related items of income on returns they made for Complete Connections Trust.  Petitioners exercised control over Complete Connections Trust, as evidenced by their signatures, as fiduciaries, on the Complete Connections Trust returns and their authority to write checks on the Complete Connections checking account.  Petitioners distributed the income of Complete Connections Trust to J&R Trust.  J&R Trust reported such income and also reported gross receipts from business and interest. Petitioners transferred their residence to J&R Trust, but

continued to treat it as if they owned it, as evidenced by their use of the residence to secure an indebtedness of theirs after their purported transfer of it to the trust. Petitioners exercised control over J&R Trust, as evidenced by their signatures, as fiduciary, on the J&R Trust returns and their authority to write checks on the J&R checking account. Petitioners distributed the income of J&R Trust to themselves and used the J&R Trust account to pay their personal expenses, as evidenced by checks drawn, for instance, to Robert C. Miller, D.D.S., New Covenant Church of God, K Mart, Steven J. Harmon, M.D., Central Coast Pathology, Payless Shoes, Musician's Emporium, Bakery Works, and Bauer Speck Student Council.

### 2. Fundamental Principles

A fundamental principle of tax law is that income is taxed to the person who earns it. See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). Recently, in Barmes v. Commissioner, T.C. Memo. 2001-155, we applied assignment of income principles to tax the income of a business to a taxpayer who had attempted an anticipatory assignment of that income to a trust. We had this to say:

> Attempts to subvert * * * [the fundamental principle that income is taxed to the person who earns it] by diverting income away from its true earner to another entity by means of contractual arrangements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes, regardless of whether such arrangements are otherwise valid under State law. See

<u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1253 (1980); see also <u>Schulz v. Commissioner</u>, 686 F.2d 490, 493 (7th Cir. 1982), affg. T.C. Memo. 1980-568. The "true earner" of income is the person or entity who controlled the earning of such income, rather than the person or entity who received the income. See <u>Vercio v. Commissioner</u>, <u>supra</u> at 1253 (citing <u>Wesenberg v. Commissioner</u>, 69 T.C. 1005, 1010 (1978)); see also <u>Commissioner v. Sunnen</u>, 333 U.S. at 604 ("The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes."). * * *

Pursuant to a second fundamental principle, we may ignore a transfer in trust as a sham where the transfer has not, in fact, altered any cognizable economic relationship between the putative transferor and the trust property. See, e.g., <u>Zmuda v. Commissioner</u>, 79 T.C. 714, 719-722 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). Recently, in <u>Muhich v. Commissioner</u>, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001), we listed the following factors to be considered in determining whether a trust lacks economic substance for tax purposes:

(1) Whether the taxpayer's relationship as grantor to the property differed materially before and after the trust's formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer felt bound by any restrictions imposed by the trust itself or by the law of trusts. * * *

3. <u>Grantor Trust Provisions</u>

Under specified circumstances, the statutory grantor trust provisions (secs. 671 through 679) treat the grantor of the trust and, sometimes, a third party, as the substantial owner of all or part of the trust. Trust income is taxed to the substantial owner under the rules of section 671. Because the conditions imposed by each of the grantor trust provisions are independent of those imposed by the others, the grantor can avoid taxation only if (1) he does not possess a disqualifying reversionary interest (sec. 673), (2) the trust cannot be revoked by the grantor or a nonadverse party (sec. 676), (3) trust income cannot be distributed to the grantor or the grantor's spouse or used to pay for insurance on their lives without the consent of an adverse party (sec. 677), (4) specified powers to control beneficial enjoyment of the corpus or income are not vested in the grantor or certain other persons (sec. 674), and (5) certain administrative powers are not exercisable by the grantor or a nonadverse party (sec. 675).

4. <u>Analysis</u>

a. <u>Income</u>

With respect to Complete Connections Trust, we have found that petitioners carried on the same business activities both before and after the trust reported income from such activities, and we have found that petitioners exercised control over the trust. Such facts are consistent with (1) respondent's

application of the assignment of income doctrine to tax to petitioners at least the trust's income derived from their personal services and (2) his disregard of the trust as a sham, which would tax all of the trust's income to petitioners. Petitioners have failed to introduce into evidence any indenture or other document establishing the terms of Complete Connections Trust, nor have they obtained the testimony of Kevin Richards, who is described on two of the Complete Connections Trust returns as either fiduciary or trustee. Petitioners were made aware of the need for the trust documents during the examination of their returns for the years in issue, and such documents were requested during discovery. They have not demonstrated (nor would we easily believe) that they lacked access to such documents, nor have they shown that Mr. Richards is unavailable to testify. We infer from petitioners' failure to produce such evidence that either it does not exist or, if it does exist, it would be negative to petitioners. McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). If petitioners retained sufficient power and control over Complete Connections' receipt of income, then such income would be taxable to them. See Barmes v. Commissioner, supra. Petitioners have failed to prove that they retained any less power and control over Complete Connections'

receipt of income than necessary to tax to them such income. They also have failed to prove that Complete Connections Trust should not be disregarded as a sham, since the transfer in trust lacked economic substance. See discussion of relevant factors, section II.B.2. supra, as set forth in Muhich v. Commissioner, supra. Finally, petitioners have failed to prove that one or both of them should not be treated as the owner of all or a portion of Complete Connections Trust on account of application of one or more of the grantor trust rules found in sections 673 through 676.

With respect to J&R Trust, we have less information with respect to its business or income producing activities (we know it obtained title to the residence (petitioners' home) and paid their personal expenses). Nevertheless, we are confident that petitioners must take into account the trust's income attributed to them by respondent since, for similar reasons as with respect to Complete Connections Trust, petitioners have failed to prove that the trust should not be disregarded as a sham or is not a grantor trust.

b. Deductions

In the case of both trusts, respondent has attributed to petitioners substantial amounts of gross receipts from business without allowing them various offsetting business deductions (and costs) claimed by the trusts. In the notice, respondent explains that petitioners have failed to show their entitlement to such

deductions. In the petition, petitioners aver no facts concerning such deductions, and, on brief, they have proposed no fact, and made no argument, with respect to such deductions. At best, we know that Rita Snyder prepared tax returns and may have provided other business services. James Snyder testified that he was in the "general computer business", buying and selling computers and doing service work and installations. While we assume that James Snyder incurred costs in buying computers for resale, we have no basis other than the self-serving figures on the Complete Connections tax returns for estimating such costs. We need not accept those figures. A taxpayer must keep sufficient records to substantiate amounts, such as the cost of goods sold, required to be shown on a return. See sec. 1.6001-1(a), Income Tax Regs; e.g., Newman v. Commissioner, T.C. Memo. 2000-345. We likewise have no basis for estimating any business expenses deductible under section 162(a), or any other section. Indeed, we have found that petitioners paid personal expenses from the J&R checking account. Without specific authority, no deduction is allowed for personal, living, or family expenses. Sec. 262(a). While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we must have some basis on which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); see also Norgaard v. Commissioner,

939 F.2d 874, 879 (9th Cir. 1991). Because the record contains no evidence upon which we could base such an estimate, we conclude that petitioners have failed to prove that they are entitled to claim any deductions under section 162(a) or any other section or any costs of goods sold.

C. Conclusion

The income adjustment on account of Complete Connections Trust for 1992 is $194,205, while gross receipts reported by Complete Connections Trust for that year are only $183,482 (no miscellaneous items of income are reported). There is no explanation for that difference, and, therefore, we cannot sustain an income adjustment for 1992 on account of Complete Connections Trust in an amount greater than $183,482. For J&R Trust for all years, and for Complete Connections Trust for 1993 through 1995, we sustain income adjustments in the amounts determined by respondent, except as follows. For all years, income attributed from the trusts to petitioners must be reduced to reflect income distributions from J&R Trust to petitioners reported on the 1992 through 1995 Forms 1040 and salary payments and any other amounts so reported. The parties shall take such adjustments into account in making the Rule 155 computation here required.

III. Penalties

A. Section 6662(a)

Section 6662(a) provides for an accuracy-related penalty (the accuracy-related penalty) in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (without distinction, negligence), any substantial understatement of income tax, or any substantial valuation misstatement. Respondent determined the accuracy-related penalty against petitioners. Although the notice states that respondent bases his imposition of the section 6662(a) accuracy-related penalty upon "one or more" of the three grounds listed in section 6662(b)(1) through (3), on brief, respondent relies only on his claims that petitioners were negligent or substantially understated their income tax.

Respondent bears the burden of production with respect to all penalties. See sec. 7491(c). The burden imposed by section 7491(c) is only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer. Respondent need not negate all defenses to the additions or penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has met his burden with respect to his claim of negligence by establishing that petitioners, in understating their income, were negligent and disregarded rules or regulations. Further, the deficiency we have redetermined for each year indicates a substantial understatement of income. See sec. 6662(d). In the petition, petitioners aver that they acted

upon professional advice in preparing the 1992 through 1995 Forms 1040. They have, however, failed to provide evidence that they received advice on which they were entitled to rely. We assume that they rely exclusively on our finding that there was no deficiency in tax. Since we have found a deficiency in tax for each year, we sustain respondent's determination of a penalty under section 6662(a) on the grounds of either negligence or substantial understatement of income, modified only to take account of the amount of each deficiency that we have determined.

B. Section 6673(a)(1)

1. Introduction

Respondent asks that we impose a penalty against petitioners under section 6673(a)(1). That section provides:

SEC. 6673. SANCTIONS AND COSTS AWARDED BY COURTS.

(a) Tax Court Proceedings.--

(1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

(C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they

file returns and litigate. Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Grasselli v. Commissioner, T.C. Memo. 1994-581 (quoting Coleman). A petition to the Tax Court is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. Id. The petition contains numerous frivolous arguments. Moreover, the record is replete with evidence of delay, and it is clear that petitioners unreasonably failed to pursue available administrative remedies. We need not find specific damages to impose a penalty under section 6673(a)(1); rather, that section is a penalty provision, intended to deter and penalize frivolous claims and positions in deficiency proceedings. Bagby v. Commissioner, 102 T.C. 596, 613-614 (1994). Petitioners do not here argue for any change in the law, and, notwithstanding that, technically, petitioners do not here prevail because of their failure to prove their case, there are numerous cases that establish that taxpayers cannot use trusts, as petitioners appear to have done, to avoid tax or shift income from one taxpayer to another. See, e.g., Zmuda v. Commissioner, 79 T.C. 714 (1982), affd. 731 F.2d 417 (9th Cir. 1984); Vercio v. Commissioner, 73 T.C. 1246 (1980); Wesenberg v. Commissioner, 69 T.C. 1005 (1978); Barmes v. Commissioner, T.C. Memo. 2001-155; Matrixinfosys Trust v. Commissioner; T.C. Memo. 2001-133; Muhich v. Commissioner, T.C. Memo. 1999-192, affd. 238 F.3d 860 (7th Cir. 2001); Alsop v. Commissioner, T.C. Memo. 1999-172; Harrold v. Commissioner, T.C.

Memo. 1991-274, affd. 960 F.2d 1053 (8th Cir. 1992); <u>Vnuk v.</u>
<u>Commissioner</u>, T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir.
1980). Following are our grounds for imposing a penalty on
petitioners under section 6673(a)(1).

### 2. The Petition

Petitioners' assignments of error include the following:
Respondent's failures to show (1) "documented authority to impose
a tax liability", (2) the "legal authority to impose a tax
liability", and (4) "the authority source for the imposition of a
legal tax obligation upon revenue sources from within the United
States". Petitioners' averments in support of their assignments
of error include the following:

> The Notice of Deficiency is required by Internal
> Revenue Code to be signed by a duly appointed
> assessment officer. There is nothing indicated on
> form 4549-A, which is an attachment to the Notice of
> Deficiency that clearly defines that a duly authorized
> signature is present as required by the Internal
> Revenue Code sec. 6201, nor are any of the forms in
> compliance to 26 USC § 6065.

> Petitioner, on information and belief, alleges that the
> sole purpose of respondent's Notice of Deficiency is
> for the obvious purpose of ensnaring the petitioner
> into a fraudulently obtained Federal Tax Court
> jurisdiction.

> On the provision that this petitioner is properly
> documented in the Trust's "Individual Master File"
> (IMF), this Trust's source of revenue is from within
> the United States and does not conform to any federally
> regulated "taxable objects".

> Petitioner, on information and belief, disputes the
> "statutory grouping of gross income and the residual
> grouping of gross income" as it may relate to this
> matter pursuant to 26 CFR § 1.861-8(a)(4).

Those assignments and averments contain tax-protester rhetoric that we are all too familiar with, and which courts have rejected time and time again.  See, e.g., our discussion <u>supra</u> at section II.A.2.a. (Validity of Notice); <u>Williams v. Commissioner</u>, 114 T.C. 136 (2000) (rejecting "as reminiscent of tax-protester rhetoric" source of income argument based on section 1.861-8(a), Income Tax Regs.); <u>Johnston v. Commissioner</u>, T.C. Memo. 2000-315 (rejecting argument that respondent must follow certain administrative procedures prior to issuing notice of deficiency); <u>Browder v. Commissioner</u>, T.C. Memo. 1990-408 (rejecting as frivolous and groundless claim that the IRS lacked delegated authority to impose an income tax); <u>Rice v. Commissioner</u>, T.C. Memo. 1978-334 (rejecting argument that notice of deficiency is an unlawful taking of property without due process).

### 3. Failure To Cooperate

By order dated April 26, 2000 (the order), we granted in part respondent's motions to compel responses to interrogatories and to compel production of documents (the motions). We granted the motions to the extent that we ordered compliance with such discovery. We set for hearing those portions of the motions seeking the imposition of sanctions if petitioners failed to comply with the order. We held such hearing on June 5, 2000 (the hearing), when this case was called from the calendar at the trial session of the Court commencing that day in San Francisco, California. We imposed sanctions because of petitioners' failure to comply with the order. In the motions, respondent detailed petitioners' failures to cooperate in the examination of the 1992 through 1995 Forms 1040 by respondent's agents prior to the issuance of the notice and their failure to cooperate in preparing this case for trial. Specifically, respondent claimed: "Petitioners James and Rita Snyder did not provide any documents or other information to the Internal Revenue Service during the audit of their 1992 through 1995 Forms 1040 Federal Income Tax Returns." Attached to the motions are copies of letters and documents evidencing respondent's repeated, unsuccessful efforts to obtain petitioners' cooperation in discovery. At the hearing, petitioners had the opportunity to rebut such claims that petitioners had failed to cooperate, but they did not. We accept those claims as true.

4. Delay

Petitioners failed to cooperate in discovery, which we can (and do) consider as evidence of an intent to delay these proceedings. See, e.g., Lipari v. Commissioner, T.C. Memo. 2000-280. In addition, we consider the following actions as evidence of delay: Petitioners refused to stipulate the authenticity of numerous documents to which petitioners could not have entertained good faith doubts about such authenticity. Petitioners refused to stipulate the notice, despite the fact that they attached a copy of the notice to their petition. They refused to stipulate their own tax return for 1991 and the tax returns for Complete Connections Trust and J&R Trust, notwithstanding that Rita Snyder personally had prepared the returns and was familiar with them. They refused to stipulate to Complete Connections Trust's and J&R Trust's bank records, despite the fact that petitioners personally handled the two trusts bank transactions and were familiar with them. As a result, respondent was forced unnecessarily to produce foundational witnesses to attest to the authenticity of these records.

Petitioners refused to stipulate certain Government records, such as deeds to their home, and business licenses for Complete Connections Trust, which petitioners themselves completed and submitted to the appropriate local agency. As a result,

respondent was forced to obtain certified copies of these records and offer them separately to the Court.

Petitioners filed a motion on June 5, 2000, requesting that the notice be declared invalid, which motion the Court denied. On October 2, 2000, petitioners filed another motion requesting that the notice be declared invalid despite the fact that the Court had already considered the issue, which motion the Court again denied.

Finally, on brief, petitioners have failed to address the substance of respondent's objections.

### 5. Conclusion

Petitioners are deserving of a penalty under section 6673(a)(1). As we stated supra, sec. III.B.1.: The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate. Petitioners are intelligent people. They know that, when taken together, their returns and the trust returns virtually eliminate their liability to pay tax by offsetting, against income that they earned, deductions for personal expenses that they could not have claimed on their own returns. Rita Snyder is a professional preparer of tax returns and, we assume, has sufficient experience to know that such scheme was illegitimate. They failed to cooperate in respondent's examination and in preparation of this case for trial. They have delayed these proceedings. Because of their stonewalling and

failure to cooperate, they have lost the opportunity to claim costs and deductions that they might have been able to claim and substantiate. That, however, is a cost they have imposed on themselves.

Without good reason, petitioners have burdened respondent and this Court with a case that we believe should not have been brought. As a penalty for such action, we impose a penalty under section 6673(a)(1) of $15,000.

An appropriate order and decision will be entered under Rule 155.